**This order is SIGNED.**



**Dated: August 9, 2019**

KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Number: 16-26526 |
| THRIVE NATIONAL CORP and THRIVE SYSTEMS, INC., | Chapter 7 |
| Debtors. | (Substantively Consolidated) |

| | |
|---|---|
| J. HOYT STEPHENSON, | Adversary Proceeding No. 18-02076 |
| Plaintiff, | |
| vs. | Hon. Kevin R. Anderson |
| THRIVE NATIONAL CORP; THRIVE SYSTEMS, INC.; BAILEY NOLAN HALL; NATIONAL FINANCIAL SYSTEMS MANAGEMENT, INC.; N&B STRATEGIES, LLC; GLACIER SECURITIES, INC.; PEAK PAYMENT SOLUTIONS; ANDREW BARNET; THRIVE NATIONAL CORP., a sole proprietorship; and JOHN DOES 1 THROUGH 5, | |
| Defendants. | |

MEMORANDUM DECISION ON PERMISSIVE ABSTENTION

In this adversary proceeding, Plaintiff J. Hoyt Stephenson sued the Debtors, the Chapter 7 Trustee, and other third-party non-debtor defendants asserting causes of action related to a state court proceeding that was pending for almost six years prior to the Debtors' bankruptcy filings.

On July 30, 2019 the Court held a hearing to consider whether it should permissively abstain from hearing certain causes of action in the above-captioned adversary proceeding related to the state court proceeding. The Court invited position statements from the parties and received the following briefs: (1) J. Hoyt Stephenson's Position Statement in Opposition to Discretionary Abstention;[1] (2) NFSM's Position Statement in Favor of Discretionary Abstention;[2] and (3) Trustee's Brief Opposing Permissive Abstention[3] and (4) Trustee's Supplemental Brief Opposing Permissive Abstention.[4]

Ted Cundick appeared on behalf of Kenneth A. Rushton, in his capacity as Chapter 7 Trustee of the estates of Thrive National Corp and Thrive Systems, Inc.[5] Steven Tycksen appeared on behalf of National Financial Systems Management, Inc. ("NFSM"). Deborah Chandler appeared on behalf of N&B Strategies, LLC, Peak Payment Solutions, and Glacier Securities, Inc. Matthew Cox appeared on behalf of J. Hoyt Stephenson.

Having carefully considered the parties' oral and written arguments, and having conducted its own independent research of the relevant case law, the Court issues the following Decision.[6]

---

[1] Adv. Proc. 18-2076, ECF No. 32.

[2] ECF No. 33.

[3] ECF No. 34.

[4] ECF No. 36.

[5] Case No. 16-26526.

[6] This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

## I.    JURISDICTION AND NOTICE

The Court reserves its discussion of jurisdiction over the claims in this adversary proceeding for consideration later in this decision. As for notice, the Court may raise the issues of permissive abstention and subject matter jurisdiction *sua sponte*.[7] However, the Court invited the parties to weigh in on the abstention issue by filing position statements and attending a hearing.[8] The Court's Order Setting Hearing on Permissive Abstention was sent to all parties to this adversary proceeding by the Bankruptcy Noticing Center on July 3, 2019.[9] Therefore, although not required, the Court finds that the parties received adequate notice of the Court's consideration of the permissive abstention issue.

## II.    FINDINGS OF FACT

### 1.   Findings of Fact from the Court's Order Setting Hearing on Permissive Abstention[10]

The Order Setting Hearing on Permissive Abstention set forth 36 separate findings of fact and gave the parties an opportunity to admit or deny each fact by numbered paragraph.[11] The Plaintiff disputed fact numbers 11, 12, 13, 19, and 20. After reviewing each of the Plaintiff's disputes, the Court finds that the Plaintiffs disputes as to fact numbers 11, 12, 13, 19, and 20 are not material and are therefore overruled. Therefore, the Court finds the following facts (as set forth in the Order Setting Hearing on Permissive Abstention) undisputed:[12]

---

[7] *In re Terracor*, 86 B.R. 671, n.15 (D. Utah 1988).

[8] ECF No. 30.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] The Court in its discretion makes additional findings set forth in paragraph numbers 19, 20, 27, and 28.

### 2. Procedural History

1.      On July 27, 2016 Thrive National Corp filed a voluntary Chapter 11 petition.[13]

2.      Upon motion of the United States Trustee, the Thrive National Corp bankruptcy was converted to a case under Chapter 7 on October 24, 2016.[14]

3.      The Debtor originally objected to the motion, but on October 20, 2016 the Debtor withdrew the objection and did not contest conversion.[15]

4.      Kenneth Rushton was appointed as Chapter 7 trustee on August 18, 2017.[16]

5.      J. Hoyt and Margie K. Stephenson (the "Stephensons") filed a motion for relief from stay to continue with state court litigation against Thrive National Corp on November 14, 2017.[17]

6.      The Stephensons later struck the hearing on their motion for relief from stay and now oppose NFSM's motion for relief from stay.[18]

7.      On February 12, 2018 NFSM filed a motion for relief from stay to continue with the state court litigation.[19]

8.      On February 16, 2018, Thrive National Corp acting as sole shareholder for Thrive Systems, Inc. ("TSI") elected the Trustee to serve a sole director for TSI and the Trustee authorized the filing of a chapter 7 bankruptcy petition for TSI.[20]

---

[13] Case No. 16-26526, ECF No. 1. All subsequent references to the docket ("ECF") will be to Case No. 16-26526 unless otherwise specified.

[14] ECF No. 47.

[15] ECF Entry dated 10/20/2016.

[16] ECF Entry dated 08/18/2017.

[17] ECF No. 99.

[18] ECF No. 108.

[19] ECF No. 112.

[20] Case No. 18-21212.

9.      On March 2, 2017 NFSM filed Proof of Claim No. 19 in the unsecured amount of $10.3 million with the basis listed as "conversion of assets."[21]

10.     On May 21, 2018 the Court entered an order granting the Trustee's motion to consolidate Thrive National Corp and TSI's bankruptcy cases.[22]

### 3.  The State Court Litigation

11.     On September 14, 2010 J. Hoyt and Margie K. Stephenson (the "Stephensons") filed a complaint in the Second District Court for the State of Utah against various business entities and individuals, including: Thrive National Corporation, Thrive Systems Inc, National Financial Systems Inc, and Bailey Hall (the "State Court Litigation").[23]

12.     On March 21, 2011 the Stephensons filed a First Amended Complaint.[24] The allegations in the First Amended Complaint revolve around a Promissory Note and Purchase Agreement dated June 30, 2009 between the Stephensons, NFSM, Bailey Hall, and Thrive National for the purchase of stock in two corporations – National Financial Systems, Inc. ("NFS") and Metronomics, Inc. ("Metronomics") – for $10,500,000.[25]

13.     NFS and Metronomics own software that may be valuable and is in use by certain non-exclusive licensees.[26]

14.     The Stephensons' First Amended Complaint in the State Court Litigation contends that as a "direct and proximate cause of Thrive National's breach of the Purchase Agreement, Thrive National is liable to Plaintiffs in an amount not less than $10,000,000.00."[27]

---

[21] Case No. 16-26526, Claims Register, Proof of Claim No. 19-1.

[22] Case No. 18-21212, ECF No. 32.

[23] ECF No. 112 (Motion for Relief from Stay), Exhibit C (State Court Docket).

[24] ECF No. 117 (Trustee's Objection to Motion for Relief from Stay), Exhibit 2 (First Amended Complaint).

[25] ECF No. 112 (Motion for Relief from Stay), Exhibit E (Purchase Agreement).

[26] ECF No. 117 (Trustee's Objection to Motion for Relief from Stay), p. 2.

[27] ECF No. 117 (Trustee's Objection to Motion for Relief from Stay), Exhibit 2 (First Amended Complaint).

15.     The First Amended Complaint asserts the following causes of action: (1) Breach of contract against Thrive National, Hall, and Thrive Systems; (2) Breach of contract against the Guarantors of a Note and Purchase Agreement; (3) a court order that Plaintiffs are properly in control of the stock or ownership interest of NFS, Metronomics, Thrive National, Thrive Systems, and Trace Minerals as a result of the default under the Note and Purchase Agreement; (4) replevin for the ownership of stock and interests in NFS, Metronomics, Thrive National, Thrive Systems, and Trace Minerals; (5) declaratory relief against all Defendants; (6) Fraud/fraud in the inducement/misrepresentation against Bailey Hall and Thrive National; and (7) Wasting of assets against Thrive National, Thrive Systems, and Hall.[28]

16.     On May 26, 2011 NFSM filed an Amended Intervenor Complaint as Third Party Plaintiff against J. Hoyt Stephenson, Bailey Hall, Thrive National, and Thrive National Corporation.[29]

17.     The Amended Intervenor Complaint asserts 19 separate causes of action.[30]

18.     On December 9, 2011 the Stephensons filed a Counterclaim against NFSM as intervenor, Third Party Complaint against Bailey Hall, Thrive National, and Thrive National

---

[28] *Id.*

[29] ECF No. 112 (Motion for Relief from Stay), Exhibit A (Amended Intervenor Complaint).

[30] (1) Breach of fiduciary duty to NFSM by J. Hoyt Stephenson; (2) Unjust enrichment by J. Hoyt Stephenson; (3) Breach of Contract by J. Hoyt Stephenson; (4) Breach of covenant of good faith and fair dealing by J. Hoyt Stephenson; (5) Breach of U.C.A. §70A-9a-101; (6) Injunctive relief against J. Hoyt Stephenson; (7) Attorney fees and costs against J. Hoyt Stephenson; (8) Rescission against J. Hoyt Stephenson; (9) Corporate waste against J. Hoyt Stephenson; (10) Conversion of stock in NFS and Metro against J. Hoyt Stephenson; (11) Conversion of assets belonging to NFSM against J. Hoyt Stephenson; (12) Fraud against J. Hoyt Stephenson; (13) Equitable reformation of the NFS & Metro Stock Purchase Agreements; (14) Declaratory Relief regarding ownership of NFS and Metro – Stephenson; (15) Declaratory relief regarding ownership of NFS and Metro – Hall, Thrive National Corporation, Thrive National, and John Does 1-5; (16) Declaratory relief regarding ownership of Fitness Clubs of America, LLC; FD Group, LLC; and Omni Health LLC – Hall, Thrive National Corporation, Thrive National and John Does 1-5; (17) Declaratory Relief that the NFS and Metro Stock Purchase Agreements as well as the Stephenson-Hall Purchase Agreements are voidable at the option of NFSM; (18) Fraud in the inducement against Bailey Hall; (19) Declaratory relief that NFSM is not bound by the Bailey Hall Purchase Agreement or by the March 2010 ESOP participant vote.

Corporation and other 5 other individuals as third-party defendants.[31] The Counterclaim and Third-Party Complaint asserts five separate causes of action against NFSM, Bailey Hall, Thrive National, Thrive National Corporation, and the third-party individual defendants.[32] The Stephensons also answered the Intervenor's Complaint.[33]

19.      On March 3, 2014 the State Court entered an Order on three separate motions for summary judgment brought by various defendants and one motion for discovery sanctions.[34] The order granted Thrive National Corporation's motion for partial summary judgment regarding the alleged breach of the purchase agreement and granted the other summary judgment motions brought by individual third-party defendants.[35] The order made findings of fact and conclusions of law, including the following:

   a.   Thrive National Corporation did not breach its obligation under the stock purchase agreement by not making a payment to the Stephensons on August 15, 2010.

   b.   The transfer to the Stephensons of the purchase agreement collateral, that included the Metro/NFS Stock, was improper.

   c.   The Stephensons are not the owners of the purchase agreement collateral.

   *d.*   The Stephensons are not the owners of the purchase agreement collateral.

---

[31] ECF No. 117 (Trustee's Objection to Motion for Relief from Stay), Exhibit 3.

[32] (1) Interference with Contractual Relationships; (2) fraudulent inducement/fraudulent repudiation/fraudulent statements; (3) civil conspiracy; (4) breach of contract; and (5) breach of implied covenant and good faith and fair dealing.

[33] ECF No. 117 (Trustee's Objection to Motion for Relief from Stay), Exhibit 3.

[34] *Id.* at Exhibit 5.

[35] *Id*.

20.    On January 15, 2015 the State Court entered a Ruling and Order on NFSM's Amended Motion for Partial Summary Judgment filed on October 18, 2013.[36] The Ruling found as follows:

  *a.* Stephenson breached his fiduciary duty owed to NFSM;

  *b.* Stephenson is liable for UCC violations arising from his foreclosure actions on the Metro/NFS Stock;

  *c.* However, the State Court found that the "established and undisputed facts are insufficient to determine any party's ownership of NFS and Metro as a matter of law."[37]

  *d.* The State Court went on to hold that NFSM could not recover both the Metro/NFS Stock and the purchase price it paid for the stock – ostensibly meaning it could recover damages or the stock, but not both.

21.    On January 7, 2016 the State Court scheduled a 9-day bench trial to commence on August 1, 2016.[38]

22.    On July 7, 2016, NFSM filed a Request for Entry of Default against Bailey Hall, Thrive National Corporation, and Thrive National.[39] The Request for Default states that the State Court entered an order granting counsel's motion to withdraw as counsel for Hall and the Thrive entities.

23.    Oral argument was set on the request for entry of default for July 27, 2016 at 3:00 p.m.[40]

---

[36] *Id.* at Exhibit 6.

[37] *Id.* at Exhibit 6, p. 17.

[38] ECF No. 112 (Motion for Relief from Stay), Exhibit H (Notice of 9-Day Bench Trial).

[39] *Id.* at Exhibit D (Request for Entry of Default).

[40] *Id.* at Exhibit C (State Court Docket).

24.     On July 27, 2016 Thrive National Corp filed a voluntary Chapter 11 bankruptcy petition at 3:01 p.m.[41] On the same date, Bailey Hall filed a Chapter 13 bankruptcy case on his own behalf (pro se) at 3:10 p.m.[42]

25.     Bailey Hall's Chapter 13 bankruptcy case was dismissed shortly thereafter on August 18, 2016.[43]

26.     According to the notices of bankruptcy filing, the State Court entered a stay of the case and cancelled the 9-day bench trial.[44]

27.     On April 14, 2017, which was after the bankruptcy filing, the State Court entered its order on the Stephenson's motion for summary judgment. The State Court noted that while it could not make findings as to the Debtor because of the bankruptcy filing, it could find that Bailey Hall, the Debtor's principal, "personally made knowingly false representations to induce the Stephensons into entering into in the Purchase Agreement."[45]

28.     The State Court Litigation docket consists of over thirty-eight pages with over 1,000 entries, including motions, briefs, transcripts, depositions, declarations, discovery, exhibits, orders, etc.[46]

### 4. The Bankruptcy Filing – Thrive National Corp.

29.     Thrive National Corp filed a Chapter 11 bankruptcy case at 3:01 p.m. on July 27, 2016.

---

[41] Case No. 16-26526.

[42] Case No. 16-26527.

[43] *Id.* at Docket No. 13.

[44] ECF No. 112 (Motion for Relief from Stay), Exhibit C (State Court Docket entry dated July 28, 2016).

[45] ECF No. 112, Exhibit K (Ruling and Order Regarding Plaintiffs' Motion for Default Judgment).

[46] ECF No. 112, Exhibit C (State Court Docket).

30.     Upon motion of the United States Trustee, the Thrive National Corp bankruptcy was converted to a case under Chapter 7 on October 24, 2016.[47] The Debtor originally objected to the motion, but later withdrew the objection and did not contest conversion.

31.     Kenneth Rushton was appointed as Chapter 7 trustee on August 18, 2017.

32.     The Stephensons filed a motion for relief from stay to continue with the state court litigation against Thrive National Corp on November 14, 2017.[48] The Stephensons later struck the hearing on their motion for relief from stay and now oppose NFSM's motion for relief from stay.[49]

33.     On February 12, 2018 NFSM filed the current motion for relief from stay to continue with the state court litigation.[50]

34.     On February 16, 2018, Thrive National Corp acting as sole shareholder for Thrive Systems, Inc. ("TSI") elected the Trustee to serve a sole director for TSI and the Trustee authorized the filing of a chapter 7 bankruptcy petition for TSI.[51]

35.     On March 2, 2017 NFSM filed Proof of Claim No. 19 in the unsecured amount of $10.3 million with the basis listed as "conversion of assets."

36.     On May 21, 2018 the Court entered an order granting the Trustee's motion to consolidate Thrive National Corp and TSI's bankruptcy cases.[52]

**5.   The Adversary Proceeding – Stephenson v. Thrive, et al. (18-02076)**

37.     On June 7, 2018 Stephenson filed a complaint against Thrive National Corp, TSI, Bailey Hall, NFSM, N&B, Glacier/Peak, and Barnet.[53] The Complaint seeks: (1) declaratory

---

[47] ECF No. 47.

[48] ECF No. 99.

[49] ECF No. 108.

[50] ECF No. 112.

[51] Case No. 18-21212.

[52] Case No. 18-21212, ECF No. 32.

[53] Adv. Proc. 18-02076, ECF No. 1.

judgment determining the nature, extent, validity, and priority of Stephenson's ownership of NFS and Metro; (2) declaratory judgment that Stephenson's rights to NFS and Metro are superior to the Debtors and that Stephenson is the owner of NFS and Metro; (3) declaratory judgment that none of the defendants have an ownership interest in NFS and Metro; (4) breach of contract against Thrive National Corp and TSI; (5) declaratory judgment against N&B, Glacier, Barnet, and Peak that any and all licenses are voidable at Stephenson's direction.

38.    On July 27, 2018 the Trustee filed an Answer to Stephenson's Complaint, Counterclaim against Stephenson, and Cross-Claim against Hall, N&B, NFSM, Glacier, Peak, and Barnet.[54] The Trustee seeks: (1) declaratory judgment that Metro and NFS are assets of the estate under § 541; (2) imposition of a resulting trust as to all assets of Hall's sole proprietorship that was later incorporated into Thrive National Corp; (3) imposition of a constructive trust; (4) claims for affirmative relief barred by Stephenson's failure to timely file a claim; (5) avoidance and recovery of unperfected transfer pursuant to §§544 and 550; (6) avoidance and recovery of fraudulent transfer §§548 and 550; (7) and avoidance and recovery of fraudulent transfer §§547 and 550.

## III.    ANALYSIS

At issue in both this bankruptcy case and the State Court Litigation is who is the rightful owner of the Metro/NFS stock. Litigation over this issue commenced in the State Court in September 2010. As evidenced by the State Court docket, the parties actively prosecuted the matter until the Debtor, Thrive National Corp, filed bankruptcy in July 2016, which was just before the scheduled nine-day trial.

Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which provides, in relevant part:

---

[54] *Id.* at ECF No. 10.

[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

This section permits bankruptcy courts to abstain "from **core matters** and non-core matters when it is in the 'interest of justice,' judicial economy, or respect for state law."[55] A court may act *sua sponte* in the absence of a motion by a party in interest.[56] A court's permissive abstention is not reviewable on appeal.[57] In considering permissive abstention, the following factors should inform the court's decision:

(1) the effect that abstention would have on the efficient administration of [the] bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the federal jurisdictional basis of the proceeding; (6) the degree of relatedness of the proceeding to the main bankruptcy case; (7) the substance of [the] asserted "core" proceeding; (8) the feasibility of severing the state law claims; (9) the burden the proceeding places on the bankruptcy court's docket; (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of parties; (11) the existence of a right to jury trial; and (12) the presence of nondebtor parties in the proceeding.[58]

The Court will address these factors in turn.

### 1.  The Effect Abstention Would Have on the Efficient Administration of the Bankruptcy Estate

The State Court Litigation has been pending since September 2010, and the Adversary Proceeding has been pending since June 2018. In the Adversary Proceeding, the Court resolved NFSM's Motion to Dismiss and Stephenson's Motion to Strike, but the Court has yet to hold an

---

[55] *In re Telluride Income Growth, L.P.*, 364 B.R. 390, 398 (10th Cir. BAP 2007) (emphasis added).

[56] *In re Terracor*, 86 B.R. 671, n.15 (D. Utah 1988).

[57] 28 U.S.C. § 1334(d).

[58] *In re Commercial Fin. Servs., Inc.*, 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000).

initial pre-trial conference. The lack of progress in the Adversary Proceeding concerns the Court. In contrast, the State Court had heard and ruled on multiple dispositive motions over six years and had set a 9-day bench trial. But for the Debtor's bankruptcy filing, the ownership of the Metro/NFS Stock would now be decided. Thus, the Court believes this matter can be resolved more quickly and appropriately in the State Court.

Further, the Court has reviewed the State Court docket and the papers, orders, and rulings attached as exhibits to the parties' papers. As noted, the actions and rulings in the State Court are extensive and complex. The Court finds that it would take a significant amount of time to review and become familiar with the circuitous history of this dispute that is already part of the State Court's institutional memory. More importantly, under the Rooker-Feldman Doctrine coupled with principles of issue and claim preclusion,[59] any ruling by this Court in the Adversary Proceeding must be consistent with the State Court's prior rulings. The best way to ensure such consistency is to allow the State Court to proceed with the previously-scheduled trial and to enter a final judgment on the matters before it. For these reasons, the Court finds that abstention will allow for a more timely, efficient, and legally-appropriate determination as to whether the Debtor held an interest in the Metro/NFS stock on the petition date. This factor favors abstention.

### 2.  The Extent to Which State Law Issues Predominate Over Bankruptcy Issues.

A determination of the Debtor's interest in the Metro/NFS stock will be decided exclusively by Utah state law, with bankruptcy law having no impact on the outcome. It is true

---

[59] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (explaining that the Rooker-Feldman doctrine precludes a federal court from exercising appellate review of a state court judgment (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983))). The Trustee and Stephenson assert that there is not a final State Court judgment and thus Rooker-Feldman does not apply. However, the Supreme Court addressed that argument by stating that in such cases, "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Id.* at 292.

that property of the bankruptcy estate is defined by 11 U.S.C. § 541,[60] but that section has no bearing on the pending dispute as to who is the legal owner of the Metro/NFS Stock. In other words, § 541 does not give the Trustee any greater rights to the stock than the Debtor held under state law on date of the bankruptcy filing.[61] Thus, state law entirely dominates over bankruptcy law, and this factor favors abstention.

### 3.   The Difficulty or Unsettled Nature of Applicable State Law.

The issues before the State Court involve well-developed principles of Utah law regarding contracts and commercial transactions. There is nothing difficult or unsettled about the applicable Utah law. While this factor weighs against abstention, for the reasons addressed in the other factors, the Court gives it little weight.

### 4.   The Presence of a Related Proceeding Commenced in State Court.

Before the bankruptcy filing, the State Court Litigation had been pending six years, and had progressed to the point where it was ready for trial. While not conclusive, the proximity of the bankruptcy filing to the trial date suggests an attempt by the Debtor to avoid the State Court Litigation. As a matter of judicial economy and comity with the State Court, it is neither realistic nor appropriate for this Court to supplant its abbreviated exposure to this dispute with the State Court's six-year involvement with the parties, the facts, and the legal issues. Because the State Court Litigation had progressed to the point of being just days from trial, this factor favors abstention.

---

[60] All subsequent references to the United States Code are to Title 11 unless otherwise specified.

[61] Indeed, § 541 does not create independent or new property rights in the Trustee, as is the case under the avoidance provisions of §§ 544 and 547 through 551. Section 541 only gives the Trustee the same property rights as the Debtor as of the commencement of the bankruptcy case.

### 5.   The Federal Jurisdictional Basis of the Proceeding.

Stephenson filed the State Court action in 2010, where it was litigated through the Debtor's bankruptcy filing in July 2016. No party sought to remove the matter to federal court, and it appears that when the action was filed in the State Court, there was no diversity of citizenship among the parties. Thus, the only basis for federal jurisdiction is the bankruptcy court's limited, non-exclusive jurisdiction under 28 U.S.C. § 1334(b) for a civil proceeding "related to cases under title 11."[62] As noted above, § 541 defines property of the estate but it has no relevance to resolving who has the superior claim to the Metro/NFS Stock under applicable state law. As discussed in more detail below, the Court has concerns about its jurisdiction to enter a final order under these circumstances. This factor weighs in favor of abstention.

### 6.   The Degree of Relatedness of the Proceeding to the Main Bankruptcy Case.

A resolution of who owns the Metro/NFS Stock is directly related to what is property of the bankruptcy estate. However, the bankruptcy court does not have exclusive jurisdiction over this strictly state-law question.[63] Further, the bankruptcy court has discretion to determine which of the two forums with concurrent jurisdiction can most expeditiously resolve the matter. Given the fact that the State Court Litigation was ready for a nine-day trial just before the bankruptcy filing, the Court concludes that the most expeditious and appropriate resolution of this issue is in the State Court. Therefore, while this factor is in opposition to abstention, the Court gives it lesser weight.

---

[62] A "related to" matter is one which does not find its source in the Bankruptcy Code, and could be pursued outside a title 11 case, but which nonetheless bears a connection with the title 11 case sufficient to bring it within federal bankruptcy jurisdiction. *In re Gladstone*, 513 B.R. 149, 153 (Bankr. S.D. Fla. 2014) (citing *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir.1990)).

[63] *Dampier v. Credit Invs., Inc. (In re Dampier)*, 2015 Bankr. LEXIS 3800, *11, 2015 WL 6756446, *4 (10th B.A.P. 2015) ("[B]ankruptcy courts and state courts have concurrent jurisdiction to adjudicate the validity of disputes arising under applicable non-bankruptcy law . . . .") (citations omitted).

### 7.    The Substance of the Asserted "Core" Proceeding.

As noted above, the lawsuit to determine ownership of the Metro/NFS Stock arose in the State Court, and the only basis for federal court jurisdiction is the Debtor's bankruptcy filing. The Trustee argues that because the Adversary Proceeding seeks a ruling that the Metro/NFS Stock is property of the estate under § 541, it is unquestionably a core bankruptcy matter. The Court is aware that a "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."[64] Even so, the Court sees the jurisdictional issue as being more nuanced[65] and is mindful of its duty not to exceed the parameters of its limited jurisdiction under 28 U.S.C. § 1334.[66] Further, as noted below, there are multiple parties in the State Court Litigation that have an interest in the determination of who owns the Metro/NFS Stock; yet, the majority of these parties are not involved in this bankruptcy case. As noted in *Stern*, "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy

---

[64] 28 U.S.C. § 157(b)(3).

[65] The Court disagrees that it has unassailable constitutional jurisdiction over all actions that involve property of the bankruptcy estate. See *Granfinanciera v. Nordberg*, 109 S. Ct. 2782 (1989) (while Chapter 11 trustee's complaint to recover a fraudulent transfer under § 548 was a statutorily core proceeding, it also involved a private right claim that created a constitutional right to a jury trial before a tribunal with appropriate jurisdiction); *Northern Pipeline v. Marathon Pipe Line*, 102 S. Ct. 2858 (1982) (bankruptcy court lacked jurisdiction to rule on debtor's complaint for breach of contract); *Exec. Bens. Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2174 (2014) (trustee's complaint to recover fraudulent transfer under § 548 was not a constitutionally core proceeding); *Stern v. Marshall*, 131 S. Ct. 2594 (2011) (while debtor's counterclaim for tortious interference was a statutorily core claim, the bankruptcy court nonetheless lacked constitutional authority to enter a final judgment).

[66] *See Stern v. Marshall*, 131 S. Ct. 2594 (2011). In *Stern*, the Supreme Court held that even though 28 U.S.C. § 157(b)(2) listed as a core proceeding "counterclaims by the estate against persons filing claims against the estate," the bankruptcy court nonetheless lacked constitutional authority to enter a final judgment on the debtor's counterclaim for tortious interference against a party that had filed a proof of claim for defamation. In other words, the bankruptcy court lacked jurisdiction to rule on the debtor's common law, private right claim in tort – which claim was property of the estate under § 541 – even though the creditor had filed a claim. Likewise in this case, the parties' competing claims to ownership of the Metro/NFS Stock involve common law, private right, state law claims that impact what is property of the bankruptcy estate. Therefore, even if this Court has statutory authority to decide the issue under 11 U.S.C. § 157, it may lack constitutional authority to do so. *Id.* at 2601.

itself or would necessarily be resolved in the claims allowance process."[67] In regard to state law actions that end up in a bankruptcy case, now-Justice Gorsuch stated that "cases properly in federal [bankruptcy] court but arising under state law and not necessarily resolvable in the claims allowance process trigger Article III's protections."[68] The Trustee asserts that because NFSM has filed a proof of claim[69] in this case, Article III protections are not implicated. But there is (yet) no objection to the NFSM claim, and a determination of who owns the Metro/NFS Stock is not necessarily resolvable in the claims allowance process (e.g., the allowance or disallowance of NFSM's claim for conversion does not necessarily resolve who is the owner of the Metro/NFS Stock).

As held in *Wellness Int'l Network, Ltd. v. Sharif*,[70] the bankruptcy court could enter a final judgment if all parties so consented. But NFSM has clearly stated that it does not consent. And while the bankruptcy could conceivably hear the matter and submit proposed findings to the Utah federal District Court for *de novo* review,[71] this would be judicially inefficient for all concerned.

Thus, the Court questions its jurisdiction to enter a final judgment as to which of the multiple claimants is the legal owner of the Metro/NFS Stock. The Court is not conclusively ruling that it lacks jurisdiction over who owns the Metro/NFS Stock, but for the reasons stated, the Court finds the more appropriate and conservative approach is to allow this matter to proceed in the State Court that has unquestionable jurisdiction over all parties and all causes of action.

---

[67] *Id.* at 2618.

[68] *In re Renewable Energy Dev. Corp.*, 792 F.3d 1274, 1279 (10th Cir. 2015).

[69] Claim No. 19-1.

[70] 135 S. Ct. 1932 (2015).

[71] *See Exec. Bens. Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172 (2014) (if parties have not consented to bankruptcy jurisdiction, then the bankruptcy court can make proposed findings for *de novo* review by the district court and entry of a final judgment).

### 8.    The Feasibility of Severing the State Law Claims.

The Trustee's counterclaim in the Adversary Proceeding includes seven causes of action.[72]
The first three causes of action revolve around the question of ownership in the Metro/NFS entities:
(1) declaratory judgment that Metronomics and NFS are assets of the estate, and that the system is
a joint asset of Metronomics and NFS; (2) imposition of a resulting trust; and (3) imposition of a
constructive trust. The fourth cause of action seeks to bar any claim by Stephenson based on an
alleged failure to timely file a proof of claim.[73] The fifth, sixth, and seventh causes of action relate
to the avoidance and recovery of transfers under § 544, 547, and 548 and are statutorily core
proceedings.[74]

However, the Debtor's interest in the Metro/NFS stock is a threshold issue to any resolution
of the Trustee's other causes of action. If the State Court determines that the Debtor had no interest
in the Metro/NFS stock and its associated rights, then there may not be any valid transfers to be
avoided. Further, whether Stephenson is barred from asserting a claim against the bankruptcy
estate is a core matter. Thus, these causes of action can be stayed and severed pending a ruling by
the State Court as to the legal owner of Metro/NFS stock. This factor favors abstention.

### 9.    The Burden the Proceeding Places on the Bankruptcy Court's Docket.

If the dispute over the Metro/NFS Stock had first been asserted in the bankruptcy case, it
would not be burdensome. But as already stated, the time required for this Court to review all
motions, pleadings, transcripts, discovery, orders, and rulings as listed on the 38 pages of the State
Court docket would be extensive. Further, at the bankruptcy hearings on this matter, the parties
constantly referenced actions, arguments, inconsistent positions, and alleged improprieties that

---

[72] Adv. Proc. 18-02076, ECF No. 10.

[73] *Id.*

[74] 28 U.S.C. § 157(b)(2).

occurred before the State Court. For this Court to try and digest the entirety of the State Court record and to rule in a manner consistent with the prior proceedings before the State Court is burdensome along with being a wasteful and unnecessary duplication of judicial resources. This factor strongly favors abstention.

### 10. The Likelihood that Commencement of the Proceeding in Bankruptcy Court Involves Forum Shopping.

As noted previously, the Debtor filed for bankruptcy just days the State Court bench trial. The State Court made rulings against both Stephenson and Hall.[75] Further, NFSM had filed a request for default against the Debtor and the Debtor's principal, Bailey Hall. Stephenson now opposes returning to the State Court. These facts suggest forum shopping.

Further, the Trustee argues that he will be prejudiced by the prior proceedings in the State Court based on an allegation that the Debtor's principal, Bailey Hall, was attempting to "throw" the litigation in favor of NFSM. The Court does not have evidence that this occurred. Indeed, the timing of the bankruptcy filing suggests Hall was attempting to avoid a negative outcome in the State Court. Nonetheless, the Trustee steps into the shoes of the Debtor in this matter and can assert no greater rights than the Debtor could assert to the Metro/NFS Stock, including any pre-petition waivers or admissions made by the Debtor in the State Court Litigation.[76] Thus, the Court does not see any legally cognizable prejudice to the Trustee if he must litigate the matter in the State Court.

---

[75] See Findings of Fact at ¶¶ 19 and 20.

[76] *Hill v. Akamai Techs., Inc. (In re MS55, Inc.)*, 477 F.3d 1131, 1138 (10th Cir. 2007) (quoting *Paul v. Monts*, 906 F.2d 1468 (10th Cir. 1990) (Chapter 7 trustee has no greater rights than the debtor and is subject to the same defenses a defendant could assert against the debtor).

### 11. The Existence of a Right to a Jury Trial.

The NFSM intervenor complaint filed in the State Court includes a demand for a jury trial.[77] However, the notice of trial scheduled to begin August 1, 2016, indicates that it was to be a 9-Day bench trial.[78] Nonetheless, the right to a jury trial exists, which is something a bankruptcy court cannot conduct without the consent of all the parties.[79] This fact also supports the Court's concern about its jurisdiction to enter a final judgment on the parties' private right, state-law causes of action without the consent of NFSM. This factor favors abstention.

### 12. The Presence of Nondebtor Parties in the Proceeding.

The existence of nondebtor parties is a considerable factor in favor of abstention in light of "[t]he right of nondebtor parties to a nonbankruptcy court forum, particularly if a jury trial right exists in a nondebtor's case."[80] There are at least 20 nondebtor entities and individuals listed on the State Court's docket as parties.[81] In the adversary proceeding, there are additional parties that are not parties to the State Court action, including: Andrew Barnet, N&B Strategies, LLC, Glacier Securities, Inc., and Peak Payment Solutions. These parties oppose abstention because they are not parties to the State Court action. However, their claims arise from licensing agreements with the Debtor for the use of gymnasium billing software that is the primary basis for the value of the Metro/NFS Stock. The parties represented to the Court that they are also holding funds that are payable to the Debtor as the ostensible owner of the Metro/NFS Stock. These parties can thus seek

---

[77] ECF No. 112, Exhibit A (Amended Intervenor Complaint).

[78] ECF No. 112, Exhibit H.

[79] See 28 U.S.C. § 157(e): "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and **with the express consent of all the parties**." (Emphasis added.)

[80] *In re Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc.*, 81 B.R. 422, 428-29 (Bankr. S. D. Tex. 1987).

[81] ECF No. 112, Exhibit C.

to participate in the State Court Litigation or, if they are not permitted to do so, their claims arising from the licensing agreements with the Debtor can be resolved in connection with the claims adjudication process in the bankruptcy court. In short, the fact that so many nondebtor parties are involved in the State Court litigation weighs strongly in favor of abstention.

## IV.    CONCLUSION

In conclusion, the Court is persuaded in its discretion that permissive abstention from the causes of action set forth in Adversary Proceeding No. 18-02076 is appropriate. The Court will stay the seven causes of action set forth in the Trustee's counterclaim[82] pending a resolution of the State Court action. The Court is aware that its decision to permissively abstain from hearing the causes of action set forth in the Adversary Proceeding may necessitate relief from the automatic stay so that the State Court action can proceed in due course. The Court leaves it to the parties to determine the best way to proceed with the State Court action – whether that is to stipulate to relief from stay, litigate NFSM's pending Motion for Relief from Stay,[83] or seek some other relief from the Court. The Court will hold a status conference in 180 days to receive an update from the parties regarding the progress toward resolving the State Court lawsuit. The Court will enter an Order consistent with this Decision.

---

[82] Adv. Proc. 18-02076, ECF No. 10.

[83] ECF No. 112.



## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing MEMORANDUM DECISION ON PERMISSIVE ABSTENTION shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- Matthew K. Broadbent matt@vannovalegal.com, vannova.ecf@gmail.com;broadbentmr74548@notify.bestcase.com;vannovalegal@ecf.courtdrive.com;encoreresss.inbound@gmail.com;ecfarchive@vannovalegal.com
- Deborah Rae Chandler dchandler@aklawfirm.com
- P. Matthew Cox bankruptcy_pmc@scmlaw.com
- T. Edward Cundick tec@clydesnow.com, laardema@clydesnow.com
- Zane S. Froerer zane.froerer@froererlaw.com
- Blake D. Miller bmiller@aklawfirm.com, millermobile@gmail.com;miller.blaked@gmail.com
- Steven C. Tycksen steve@tyshlaw.com, alicia@tyshlaw.com,lori@tyshlaw.com,Laura@tyshlaw.com,allison@tyshlaw.com
- Michael N. Zundel mnz@mnzlegal.com, carol@mnzlegal.com;carolp@princeyeates.com;tec@princeyeates.com


**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Bailey Nolan Hall
1902 South Kay Drive
Kaysville, UT 84037

Thrive National Corp
1645 E Highway 193
Layton, UT 84040